**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

_____

| | |
|---|---|
| **ERIK SALAIZ,** | § |
| | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **TEXAS ROOFING & RENOVATIONS LLC,** | §    **Case No. 3:23-CV-00321-KC** |
| d/b/a **TEXAS ROOFING & SOLAR**, a Texas | § |
| Limited Liability Company | § |
| **Defendant.** | § |
| | § |

_____

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      Plaintiff ERIK SALAIZ is a natural person and is a citizen of the Western District of

Texas and was present in the Western District of Texas during all calls at issue in this case.

2.      Defendant TEXAS ROOFING & RENOVATIONS LLC d/b/a TEXAS ROOFING &

SOLAR ("TRR" "Defendant") is a limited liability company existing under the laws of Texas

with its principal address at 611 S Main Street, Suite 200, Grapevine, Texas 76051 and can be

served via its registered agent ROB MCCALL CPA, PLLC at 603 S Main Street, Suite 205,

Grapevine, Texas 76051.

3.      Unnamed Party JOHN DOE TELEMARKETER ("John Doe") is an unidentified offshore

telemarketing company that makes solicitation phone calls at the instruction, direction, and

oversight of Defendant TRR.

### NATURE OF ACTION

4.      As the Supreme Court recently explained, "Americans passionately disagree about many

things. But they are largely united in their disdain for robocalls. The Federal Government receives

a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

5.      Plaintiff Erik Salaiz ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant's telemarketers placed illegal telemarketing unauthorized calls to him in violation of the TCPA.

6.      As part of marketing their services, Defendant TRR hired and authorized their affiliates/telemarketers to place unauthorized calls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

7.      Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## JURISDICTION AND VENUE:

8.      This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

9.      This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 and 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

10.     This Court has personal jurisdiction over the Defendant because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant regularly conducts business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

12.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

15.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

16.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

17.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

19.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

21.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22.     The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

23.     Under the TCPA, a text message is a call.  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## FACTUAL ALLEGATIONS:

24.     Plaintiff successfully registered his personal cell phone (XXX) XXX-0898 on the National Do-Not-Call Registry on August 19, 2021, which was more than 31 days prior to receiving the alleged calls.

25.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

26.     Defendant TRR offers solar panel systems to consumers.

27.     Defendant TRR is owned and operated by Chad Hawkins.

28.     As part of their marketing, Defendant TRR hired and instructed John Doe to make phone calls on behalf of Defendant TRR to tele solicit their solar panel systems.

29.     John Doe unknown entity, that through information and belief, is located offshore and out of the jurisdiction of the United States and the State of Texas.

30.    Defendant TRR generates substantial solar panel profits from soliciting its services through illegal telemarketing.

31.    John Doe makes solicitation telephone calls at the direction, instruction, and guidance of Defendant TRR.

32.    Defendant TRR is well aware that the unauthorized phone calls being made on their behalf by John Doe are being made in violation of the TCPA.

33.    John Doe makes solicitation telephone calls at the direction, instruction, and guidance of Defendant TRR.

34.    John Doe employs the use of an ATDS in furtherance of their telephone marketing campaign on behalf of Defendant TRR.

35.    John Doe makes these calls on behalf of Defendant TRR without prior express written consent of the consumers they call.

36.    John Doe knowingly and willfully makes solicitation phone calls on behalf of Defendant TRR to consumers that have their residential phone numbers (including cell phones) registered on the National Do-Not-Call Registry.

37.    Defendant TRR approves of the contracts with John Doe.

38.    Defendant TRR compensates John Doe for new leads that generate through illegal telemarketing.

39.    Defendant TRR authorizes the payments to John Doe.

40.    Defendant TRR pays John Doe out of bank accounts Defendant TRR owns and controls.

41.    Within the month of May 2023, Plaintiff was bombarded and harassed by John Doe by phone calls soliciting solar panel systems on behalf of Defendant TRR.

42.    Plaintiff did not request information regarding solar panel systems.

43.    Plaintiff on multiple occasions advised the telemarketers from John Doe that he was not interested in solar systems and to remove his number 0898 from their calling list.

44.    Plaintiff received at least nine (9) unauthorized calls to his personal cell phone 0898 ("the calls") from John Doe calling on behalf of Defendant TRR soliciting solar panel systems within a month period.

45.    From the apparent authority of Defendant TRR, John Doe spoofed the Caller IDs to Plaintiff's local area code (915) on every alleged call to trick Plaintiff into thinking the calls were being made locally.

46.    The calls were made using an ATDS that has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers.

47.    The calls John Doe made to Plaintiff on behalf of Defendant TRR were not made to Plaintiff directly and could have reached anyone in the United States (indicating the call was made using an ATDS).

48.    Plaintiff has never been a customer of Defendant TRR, and has had no relationship with Defendant TRR, which is an indication of the use of an ATDS.

49.    Defendant TRR or John Doe had no reason to have Plaintiff's phone number 0898 in their possession or in any database or spreadsheet that would have been used to call Plaintiff.

50.    John Doe made at least nine harassing calls to Plaintiff calling on behalf of Defendant TRR before Plaintiff was able to identify the company John Doe was calling on behalf of.

51.    John Doe failed to properly identify themselves and who they were calling on behalf of on every alleged phone call.

52.     Upon information and belief Plaintiff has received additional calls within the past two years from John Doe calling on behalf of Defendant TRR soliciting solar panel systems that are unknown to Plaintiff at this time but will be revealed during discovery.

53.     **Calls #1-8 -** Plaintiff answered each of these calls and was greeted by telemarketers from John Doe soliciting solar panel systems.

54.     **Calls #1-8 –** Each of the telemarketers from John Doe had the same script that stated,

"we are reaching out to you about the government solar rebate program that will help you reduce your monthly electric bill up to sixty percent and your bill will be a fixed rate that will never increase in the future so I believe you are the homeowner right?"

55.     **Calls #1-8 –** Plaintiff advised the telemarketers he was not interested in solar panels and advised them to remove his phone number 0898 from their calling list.

56.     **Calls #1-8 –** The telemarketers failed to properly identify where they were calling from and/or who they were calling on behalf of.

57.     Despite Plaintiff advising the telemarketers to remove his number 0898 from their calling list, the calls continued.

58.     **Call #9 –** Plaintiff answered and was greeted by a telemarketer from John Doe once again soliciting solar panel systems and stated to Plaintiff,

"we are reaching out to you about the government solar rebate program that will help you reduce your monthly electric bill up to sixty percent and your bill will be a fixed rate that will never increase in the future so I believe you are the homeowner right?"

59.     **Call #9 –** The telemarketer failed to properly identify where he was calling from and/or who he was calling on behalf of.

60.     **Call #9 –** For this reason stated in paragraph 59, Plaintiff was forced to feign interest in solar panel systems and engage in the call with the telemarketer in order to identify who John Doe was calling on behalf of.

61.    The telemarketer asked Plaintiff qualifying questions regarding solar panel systems such as Plaintiff's zip code, name, address, monthly electric bill, credit score, and if Plaintiff was the homeowner.

62.    The telemarketer then advised Plaintiff he was going to transfer him to John Doe's "solar professional."

63.    Plaintiff was then transferred to a representative from Defendant TRR named Mubarak Odeh.

64.    Before the telemarketer transferred Plaintiff, the telemarketer stated to Mubarak, "Hello sir I have Erik with me on the line from the state of Texas zip code 79907 and interested to get the free quotes about the solar panels so over to you and you both have a good day."

65.    Mubarek accepted the transfer from the telemarketer confirming Defendant TRR hired John Doe for telemarketing their solar panel systems.

66.    There was never an interruption of the phone call during the transfer indicating a close relationship and coordination between Defendant TRR and John Doe.

67.    The telemarketer transferred Plaintiff's information directly to Mubarek.  This transfer indicated a shared use of the same operating system used to facilitate phone calls and potential clients.

68.    Mubarek asked Plaintiff more qualifying questions and solicited Plaintiff for a solar panel system on behalf of Defendant TRR.

69.    Mubarek confirmed on the call that he was with Texas Roofing & Solar.

70.    Plaintiff searched the Texas Secretary of State website and found that Texas Roofing & Solar is a registered assumed name owned by Defendant TRR.

71.    The next day on May 27, 2023, Plaintiff received a call from a male named Leon who advised Plaintiff he was a solar specialist and he works with Mubarek.

72.    Leon advised Plaintiff he was going to email Plaintiff a solar proposal based off the information Mubarek provided to Leon.

73.    Plaintiff received a solar proposal from Leon on behalf of Defendant TRR.

74.    Leon also confirmed to Plaintiff he was with Defendant TRR.

75.    The information Mubarek and Leon provided to Plaintiff confirmed Defendant TRR is the company responsible for the calls Plaintiff received by John Doe.

76.    With information and belief Defendant TRR relies on John Doe to make telemarketing calls on its behalf, Defendant TRR has direct knowledge that such calls are being made to residential numbers (including cell phones) that are registered on the National Do Not Call Registry without prior express written consent.

77.    With information and belief Defendant TRR relies on John Doe to make telemarketing calls on its behalf, Defendant TRR hired them to interact with the public on Defendant TRR's behalf and therefore gave implied authority to represent Defendant TRR and call residential numbers (including cell phones) that are registered on the National Do Not Call Registry without prior express written consent.

78.    Defendant TRR ratifies the behavior from John Doe by knowing of the illegal conduct and failing to repudiate the conduct.

79.    Plaintiff did not provide his prior express written consent to receive any of the alleged calls.

80.    None of the alleged calls were made for emergency purposes.

81.    Plaintiff made at least eight Do Not Call Requests to John Doe and John Doe ignored Plaintiff's requests.

82.     Table A below summarizes the phone calls Plaintiff received from John Doe on behalf of

Defendant TRR:

Table A

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 05/16/2023 | 12:27 PM | 915-200-6099 | Telemarketer calling from John Doe soliciting solar panel systems. |
| 2 | 05/18/2023 | 12:56 PM | 915-200-8821 | Telemarketer calling from John Doe soliciting solar panel systems. |
| 3 | 05/19/2023 | 12:03 PM | 915-200-5501 | Telemarketer calling from John Doe soliciting solar panel systems. |
| 4 | 5/20/2023 | 4:35 PM | 915-200-9898 | Telemarketer calling from John Doe soliciting solar panel systems. |
| 5 | 05/22/2023 | 4:00 PM | 915-200-4374 | Telemarketer calling from John Doe soliciting solar panel systems. |
| 6 | 05/23/2023 | 9:49 AM | 915-200-8481 | Telemarketer calling from John Doe soliciting solar panel systems. |
| 7 | 05/23/2023 | 6:24 PM | 915-200-6416 | Telemarketer calling from John Doe soliciting solar panel systems. |
| 8 | 05/24/2023 | 3:39 PM | 915-200-4424 | Telemarketer calling from John Doe soliciting solar panel systems. |
| 9 | 05/26/2023 | 11:47 AM | 915-200-4368 | Telemarketer calling from John Doe soliciting solar panel systems. Transferred to Mubarek from TRR. |

83.     Defendant TRR employs outrageous, aggressive, and illegal sales techniques that violate

multiple federal laws and state consumer statutes.

84.     Defendant TRR has knowledge of and has adopted and maintained TCPA violations as a

sales strategy.

85.      Defendant TRR knew full well that John Doe was calling and harassing consumers in an

attempt to procure business on behalf of Defendant TRR because Defendant TRR directed John

Doe to make the phone calls and to ignore Do Not Call requests.

86.      Defendant TRR willfully accepts these referrals and compensates John Doe for their

illegal phone calls.

87.    Defendant TRR refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendant TRR financially.

88.    Plaintiff sent an internal do-not-call policy request to Defendant TRR to email chad@texasrr.com on August 29, 2023, which is an email owned and controlled by Defendant TRR.

89.    Defendant TRR never sent Plaintiff their internal do-not-call policy.

90.    Upon information and belief, Defendant TRR did not train John Doe who engaged in telemarketing on behalf of Defendant TRR, on the existence and use of Defendant's internal do not call policy as John Doe failed to recognize Plaintiff's personal cell phone 0898 is registered on the National Do-Not-Call Registry.

91.    Defendant TRR is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitation calls into Texas.

92.    The https://direct.sos.state.tx.us/telephone/telephonesearch.asp website ("Texas Registration Database") does not contain Defendant TRR's registration.

93.    Defendant TRR does not qualify for an exemption under § 302.053.

94.    Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANT TRR

95.     Defendant TRR is vicariously liable for the telemarketing calls that generated the lead on their behalf.

96.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

97.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

98.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

99.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

100.    More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  *Id.* at 6586 ¶ 34.

101.    The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

102.    To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

103.    Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

104.    Defendant TRR is legally responsible for ensuring that John Doe that makes telemarketing calls on behalf of Defendant TRR comply with the TCPA when so doing.

105.    Defendant TRR knowingly and actively directed the phone calls in this Complaint be made.

106.    Defendant TRR instructed John Doe on what states to call, what hours to call, and what to say when the phone calls were answered.

107.    Defendant TRR directed John Doe on the qualifications required for each customer and supplied John Doe with the hardware and software used to enter those qualifications.

108.    Defendant TRR supplied John Doe with the hardware and software used by John Doe to live transfer Plaintiff and other consumers during live phone calls.

109.    Defendant TRR knew (or reasonably should have known) that John Doe was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

110.    Furthermore, Defendant TRR had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an automatic telephone dialing system to contact potential customers of Defendant TRR and the ability to require them to respect the National Do Not Call Registry.

111.    Defendant TRR also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

112.    Defendant TRR donned its telemarketers with apparent authority to make the calls at issue. Thus, John Doe pitched Defendant's solar panel systems in the abstract.

113.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

114.    "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

115.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

116.   John Doe transferred customer information, including Plaintiff's contact information, directly to Defendant TRR. Thus, John Doe had the "ability . . . to enter consumer information into Defendant TRR's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

117.   Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

118.   Defendant TRR is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when John Doe solicited Plaintiff for solar panel systems on behalf of Defendant TRR.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

119.   The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

120.   The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

121.   Defendant  initiated the phone calls alleged herein and is a "seller" under the Texas Business and Commerce Code because it makes telephone solicitation on its own behalf through John Doe and authorized third parties such as the anonymous telemarketers that called Plaintiff in this case.

122.    Under TCBB 302.302 "a person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation."  Telephone calls initiated by the anonymous telemarketer are attributable to both them individually and to Defendant.

123.    The actions of the Defendant violated the Texas Business and Commerce Code 302.101 by authorizing John Doe to place solicitation phone calls to a Texas resident on behalf of Defendant without having a registration certificate and bond on file with the Texas Secretary of State.

124.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302."  Tex. Bus. & Com. Code § 302.303.

125.    The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.

126.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made."  Tex. Bus. & Com. Code § 302.101(a).

127.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

128.    Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory,

and had his privacy invaded by the harassing telemarketing calls.

129.    The calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

130.    Plaintiff has been annoyed, harassed, and irritated by unauthorized telemarketing calls placed on behalf of Defendant TRR.

131.    The calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## THE PLAINFF'S CELL PHONE IS A RESIDENTIAL NUMBER

132.    The calls were to the Plaintiff's cellular phone 0898, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name and pays the cell phone from his personal accounts.

## CAUSES OF ACTION:

## COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

133.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

134.    Defendant and/or their affiliates or telemarketers violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least nine (9) times by placing non-emergency telemarketing calls to

Plaintiff's cellular telephone number using an automatic telephone dialing system without his prior express written consent.

135.    Plaintiff was statutorily damaged at least nine (9) times under 47 U.S.C. § 227(b)(3)(B) by the Defendant by the telephone calls described above, in the amount of $500.00 per call.

136.    Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

137.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or without prior express written consent.

## COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

138.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

139.    Defendant and/or their affiliates or telemarketers called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

140.    Plaintiff was statutorily damaged at least nine (9) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

141.    Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

142.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## **COUNT THREE:**
### **Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**

143.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

144.    The foregoing acts and omissions of Defendant and/or their affiliates or telemarketers constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a.    A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [2];

   b.    Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,

   c.    In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

145.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

146.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### (Violations of The Texas Business and Commerce Code 305.053)

147.    Plaintiff incorporates the foregoing allegations as if set forth herein.

148.    The foregoing acts and omissions of Defendant and/or their affiliates or telemarketers constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. Defendant violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

149.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

150.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## COUNT FIVE

### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate

151.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

147.    Defendant and/or their affiliates or telemarketers made at least nine (9) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

148.    As a result of Defendant's and/or their affiliates or telemarketer's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

149.    As a result of Defendant's and/or their affiliates or telemarketer's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendant jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by the Defendant violates the TCPA and Texas state law;

C.    An injunction enjoining the Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for nine (9) calls.

E.    An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for nine (9) calls.

F.    An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporation for nine (9) calls.

G.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for nine (9) calls.

H.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA and Texas state law;

I.      An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity.

J.      Such further relief as the Court deems necessary, just, and proper.

September 1, 2023,                          Respectfully submitted,


Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
Salaiz.ep@gmail.com