IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ERIK SALAIZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. EP-23-CV-321-KC |
| | § | |
| TEXAS ROOFING & | § | |
| RENOVATIONS LLC and CHAD | § | |
| HAWKINS, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day, the Court considered Plaintiff's Motion for Default Judgment ("Motion"),
ECF No. 46. For the reasons set forth below, the Motion is **GRANTED** in part and **DENIED** in
part.

## I.    BACKGROUND

This case involves alleged violations of the Telephone Consumer Protection Act
("TCPA"), 47 U.S.C. § 227, and the Texas Business and Commerce Code ("TBCC") Section
302.101. Plaintiff, Erik Salaiz, registered his personal cell phone number on the National Do-
Not-Call Registry on August 19, 2021. Am. Compl. ¶ 25, ECF No. 15. In May 2023, Plaintiff
received a total of nine telephone calls over a ten-day period from telemarketers attempting to
sell solar panel systems on behalf of Defendants Texas Roofing & Renovations LLC ("Texas
Roofing") and Chad Hawkins. *Id.* ¶¶ 41, 53–60, 83. The telemarketers used a common script
that referenced a "government solar rebate program." *Id.* ¶ 54. Plaintiff informed the
telemarketers that he was not interested in buying solar panels and asked them to remove his
phone number from their calling list. *Id.* ¶ 55. But the calls continued. *Id.* ¶¶ 55, 57. The

telemarketers did not identify the company on whose behalf they were calling but Plaintiff eventually traced the source of these calls to "Texas Roofing & Solar," which Plaintiff subsequently discovered was a "registered assumed name" of Texas Roofing. *Id.* ¶¶ 58–71, 72–75. Plaintiff contends that these calls were made through an automatic telephone dialing system ("ATDS"), *id.* ¶¶ 7, 34, 149. Plaintiff also states that Texas Roofing did not hold a Texas-issued registration certificate for the business location from which the telephone solicitations were made. *Id.* ¶¶ 163–66.[1]

Plaintiff filed his Complaint on September 5, 2023. Compl. 1, ECF No. 1. Plaintiff properly served Texas Roofing, and the Court subsequently granted a Motion for Extension of Time to Answer filed by Texas Roofing's Owner, Chad Hawkins. *See* Summons Returned Executed, ECF No. 5; Sept. 27, 2024, Order, ECF No 7.[2] Despite obtaining the extension, Texas Roofing then failed to appear. Plaintiff subsequently filed an Amended Complaint that added Hawkins as Defendant in his own right and properly served him on December 21, 2023. *See generally* Am. Compl.; Summons Returned Executed, ECF No. 21. Texas Roofing again failed to appear in response to the Amended Complaint. Hawkins filed a Motion to Dismiss, ECF No. 22, and accompanying Memorandum in support, ECF No. 23, in early January 2024. But afterwards, Hawkins did not comply with multiple Court orders to meet and confer with Plaintiff as required by the Court's Standing Order on Pretrial Deadlines. *See* Feb. 27, 2024, Order, ECF No. 32; Mar. 13, 2024, Order, ECF No. 36; Mar. 28, 2024, Order, ECF No. 39. The Court

---

[1] The numbering for Plaintiff's Amended Complaint for the paragraphs after paragraph 163 appears to be wrong. Accordingly, for ease of reference, the Court describes the paragraphs numbered as paragraphs 147–49 in the Amended Complaint at pages 24–25 as paragraphs 164–66.

[2] Although the Court granted Hawkins's Motion, the Court cautioned that Texas Roofing needed to be represented by an attorney in all future filings. Sept. 27, 2024, Order.

subsequently ruled that default judgment should be entered against Hawkins as a sanction for his refusal to comply with the Court's Orders. Apr. 26, 2024, Order, ECF No. 43.

The Clerk entered default against Texas Roofing on May 3, 2024, Clerk's Entry Default, ECF No. 45, and this Motion, ECF No. 46, followed. The Court issued an Order striking Hawkins's Motion to Dismiss and Memorandum on June 28, 2024. June 28, 2024, Order, ECF No. 47. On September 26, 2024, Hawkins filed an Order of Discharge, which indicated that Hawkins had been issued a Chapter 7 Bankruptcy discharge on August 14, 2024. Bankruptcy Discharge Notice, ECF No. 50. The Court entered an Order giving Plaintiff an opportunity to file an additional brief addressing the impact of the bankruptcy discharge on his default judgment motion against Hawkins. Oct. 2, 2024, Order, ECF No. 51. Plaintiff did not file an additional brief, and the deadline to do so has elapsed. *See id.*

## II.    DISCUSSION

### A.    Standard

The clerk of the court shall enter default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After the clerk enters default, a party may move for a default judgment. *See* Fed. R. Civ. P. 55(b); *see also N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

Courts conduct a three-step analysis to determine whether default judgment should be entered. *See CoreStates Constr. Servs., Inc. v. Red Beard Excavators, LLC*, No. 1:22-cv-898-RP, 2024 WL 1595696, at *2 (W.D. Tex. Feb. 29, 2024) (citations omitted); *Alvarado Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 752 (N.D. Tex. 2020) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). First, the court determines whether entry of default

judgment is procedurally warranted. *Alvarado*, 444 F. Supp. 3d at 752 (citing *Lindsey*, 161 F.3d at 893). Second, the court assesses whether judgment is substantively warranted—that is, "whether there is a sufficient basis in the pleadings for judgment." *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). In assessing whether the complaint contains a sufficient basis for a default judgment, the court applies the standard governing the sufficiency of a complaint under Federal Rule of Civil Procedure 8. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And third, the court decides what relief the plaintiff should receive, if any. *Alvarado*, 444 F. Supp. 3d at 752 (citing *Ins. Co. of the W. v. H&G Contractors, Inc.*, No. 10-cv-390, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011)).

> **B.    Analysis**
>
> **1.    Effect of Hawkins's bankruptcy discharge.**

Hawkins filed an Order of Discharge showing that the United States Bankruptcy Court for the Northern District of Texas granted him a Chapter 7 discharge on August 14, 2024. Bankruptcy Discharge Notice. The Court provided Plaintiff an opportunity to file an additional brief regarding the impact of Hawkins's discharge on Plaintiff's motion for default judgment against him. Oct. 2, 2024, Order 2. Plaintiff did not file an additional brief in response or otherwise address Hawkins's discharge.

As the Court noted in its Order, *id.* at 1–2, an Order of Discharge under the Bankruptcy Code generally "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524; *see In re Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993). "The granting of a

discharge in a Chapter 7 case obviously invokes certain permanent protections for the benefit of

an individual debtor," which includes discharging the debtor from all debts arising prior to the

granting of discharge. *In re Schultz*, 251 B.R. 823, 827–28 (Bankr. E.D. Tex. 2000); *see also* 11

U.S.C. § 727(b) ("[A] discharge . . . discharges the debtor from all debts that arose before the

date of the order for relief under this chapter."). Accordingly, "the entry of a discharge order

enjoins lawsuits and voids judgments . . . with respect to the 'personal liability of the debtor.'"

*Schultz*, 251 B.R. at 827–28; *see also In re Garske*, 287 B.R. 537, 542 (B.A.P. 9th Cir. 2002)

("The discharge injunction survives the bankruptcy case and applies permanently with respect to

every debt that is discharged."). As the Court further noted in its October 2 Order, there are

certain situations where a debt is not subject to discharge. This includes when the relevant

creditor was not listed or included in the schedule of assets and liabilities filed by the debtor in

bankruptcy court, or the notice provided to the creditor otherwise fell short of the constitutional

requirements of due process. 11 U.S.C. §§ 521(a)(1), 523(a)(3)(A); *see In re Faden*, 96 F.3d

792, 795 (5th Cir. 1996); *In re Compton*, 891 F.2d 1180, 1184 (5th Cir. 1990); *U.S. Small Bus.

Admin. v. Bridges*, 894 F.2d 108, 111 (5th Cir. 1990) (discussing 11 U.S.C. § 523).

Here, Plaintiff's case was originally filed on September 5, 2023, and relates to alleged

conduct occurring in May 2023. *See generally* Compl.; Am. Compl. Discharge under Chapter 7

of the Bankruptcy Code was granted for Defendant Hawkins on August 14, 2024. Bankruptcy

Discharge Notice. Further, Hawkins filed his Chapter 7 Voluntary Petition on May 9, 2024. *See

generally* Voluntary Pet. Individuals Filing Bankruptcy, *In re Chad Brandon Hawkins*, No. 24-

41634 (Bankr. N.D. Tex May 9, 2024), ECF No. 1.[3] Any damages awarded to Plaintiff for

---

[3] The Court takes judicial notice of the Bankruptcy Court's docket. *Doe v. Marion Indep. Sch. Dist.*, No.
5:17-cv-1114-OLG, 2019 WL 409339, at *1 n.1 (W.D. Tex. Jan. 31, 2019); *see also Karaha Bodas Co. v.
Perusahaan Perambangan Minyak Dan Gas Bumi Negara*, No. 2-20042, 2003 WL 21027134, at *4 n.***

Hawkins's alleged violations of the TCPA and TBCC would thus constitute "pre-petition debt" and fall under the relief from personal liability granted Hawkins by his bankruptcy discharge. *See Schultz*, 251 B.R. at 828. Further, Hawkins included Plaintiff in his petition for bankruptcy through listing Plaintiff as an unsecured creditor, including Plaintiff's lawsuit against him as an identified legal action, and listing Plaintiff in an overall list of creditors. Voluntary Pet. Individuals Filing Bankruptcy 26, 44, 59. Again, Plaintiff has filed nothing with the Court addressing the bankruptcy issue, nor has he otherwise given the Court any indication that he did not receive proper notice of Hawkins's bankruptcy proceeding. Accordingly, Hawkins's bankruptcy discharge precludes the Court from granting default judgment against Hawkins and the Court must dismiss Plaintiff's claims against him. *See, e.g.*, *Doe v. Marion Indep. Sch. Dist.*, No. 5:17-cv-1114, 2019 WL 409339, at *2 (W.D. Tex. Jan. 31, 2019) (recommending dismissal, sua sponte, of claims against one defendant after he was granted bankruptcy discharge); *Chapin Home for the Aging v. McKimm*, No. 11-cv-667, 2015 WL 1237830, at *1 (E.D.N.Y. Mar. 17, 2015) (granting, in part, defendant's motion to dismiss claims because the debt was subject to bankruptcy discharge); *Frost Nat'l Bank of San Antonio v. Texaco, Inc.*, No. 95-c-408, 1997 WL 33770431, at *5 (S.D. Tex. Feb. 18, 1997), *aff'd*, 134 F.3d 366 (5th Cir. 1997) (granting summary judgment for defendant after reasoning that plaintiffs' claims were discharged by bankruptcy).

　　Although the Court may not grant default judgment against Hawkins, the Court may still grant default judgment against Texas Roofing. "A discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt." *Edgeworth*,

---

(5th Cir. Mar. 5, 2003) ("This court can take judicial notice of another court's judicial action." (collecting cases)).

993 F.2d at 53.  Thus, even if an individual is released from personal liability for a debt, "the

debt still exists and can be collected from any other entity that might be liable."  *Id*; *see also* 11

U.S.C. § 524(e) ("Except as provided in subsection (a)(3) of this section, discharge of a debt of

the debtor does not affect the liability of any other entity on, or the property of any other entity

for, such debt.").

Accordingly, the Court determines only whether default judgment may be entered against

Texas Roofing and dismisses Plaintiff's claims against Hawkins.

### 2.    Default judgment is procedurally warranted against Texas Roofing.

Courts focus on six factors when determining whether the entry of default judgment is

procedurally warranted.  *See J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F.

Supp. 3d 809, 814 (N.D. Tex. 2015) (citing *Lindsey*, 161 F.3d at 893).  These factors include:

1) whether there are material issues of fact at issue; 2) whether there has been substantial

prejudice; 3) whether the grounds for default are clearly established; 4) whether the default was

caused by good faith mistake or excusable neglect; 5) the harshness of default judgment; 6)

whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

Each of these six factors support default judgment in this instance.  First, Texas Roofing

did not file any responsive pleading, so no material facts are in dispute.  Second, Texas

Roofing's failure to appear in this matter has caused substantial prejudice to Plaintiff's ability to

prosecute his case and "bring[s] the adversary process to a halt."  *See Ins. Co. of the W. v. H & G

Contractors, Inc.*, 2011 WL 4738197, at *3 (citations omitted).  Third, the grounds for default

are clearly established for Texas Roofing.  Texas Roofing, via Hawkins, initially indicated that it

was attempting to secure representation for itself.  *See* Mot. Extension Time, ECF No. 6.  The

Court granted Texas Roofing an extension and reiterated that business entities must be represented by an attorney.  Sept. 27, 2023, Order.  Despite this, Texas Roofing did not file an Answer or otherwise respond to Plaintiff's Original Complaint or Amended Complaint.  Grounds for default judgment are established when a party is "totally unresponsive," even if they have previously appeared or—as in this case—attempted to appear.  *See Flying R Aviation, LLC v. Bondio, LLC*, No. 22-cv-1341, 2023 WL 4826217, at *1–3 (N.D. Tex. July 26, 2023) (granting default judgment for plaintiff against defendant who had previously removed case to federal court and filed an answer but then subsequently "stopped participating" in the case) (citing and quoting *J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011)).  Fourth, there is no evidence to suggest that Texas Roofing's silence is due to "good faith error or excusable error or neglect."  *Lindsey*, 161 F.3d at 893.  Fifth, default judgment is not overly harsh given that Plaintiff seeks only the relief to which he is entitled under the applicable statutes and Texas Roofing has failed to appear.  *See Holladay*, 2015 WL 5916440, at *2 ("Plaintiff only seeks the relief to which she is entitled under the FLSA, mitigating the harshness of a default judgment against Defendants."); *Alvarado*, 444 F. Supp. 3d at 753 (reasoning that defendant's "complete failure to respond mitigates the harshness of a default judgment" (cleaned up)).  Finally, no facts or evidence suggest that Texas Roofing would be able to demonstrate the good cause necessary for the Court to set aside default judgment.[4]  *See Holladay*, 2015 WL 5916440, at *2.

      Thus, default judgment is procedurally warranted.

---

[4] However, this is not to predetermine any such request.  Texas Roofing may file a motion to set aside default and vacate default judgment, and the Court will consider it in the ordinary course.  Of course, as previously ordered, because Defendant is a business entity, any such motion to set aside or vacate must be filed by an attorney.  *See* Sept. 27, 2023, Order.

### 3. Plaintiff's pleading provides a sufficient basis for default judgment against Texas Roofing.

#### a. Texas Roofing's Vicarious Liability

Plaintiff alleges that the calls he received were made by a telemarketer from an "unidentified offshore telemarketing company that makes solicitation phone calls at the instruction, direction, and oversight of Defendant [Texas Roofing]." Am. Compl. ¶ 4. Plaintiff alleges that Hawkins, owner of Texas Roofing, "hired and instructed [telemarketers] to make phone calls on behalf of Defendant [Texas Roofing] to tele solicit their solar panel systems," that the telemarketers made "solicitation telephone calls at the direction, instruction, and guidance of [Texas Roofing]," and that Texas Roofing was "well aware that the unauthorized phone calls being made on their behalf by [the telemaketers] are being made in violation of the TCPA." Am. Compl. ¶¶ 3, 29, 32–33.

The Federal Communications Commission and various courts—including this one—have held that a principal can be held "vicariously liable under federal common law agency principles for a TCPA violation" by a third-party acting as their agent. *In re Joint Pet. Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6582 (2013); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) (finding "no cause to question" the FCC's decision in *Dish Network*); *Salaiz v. VSC Operations LLC*, No. 3:23-cv-423-KC, 2024 WL 3405601, at *2 (W.D. Tex. July 10, 2024) (conducting an agency analysis to determine whether defendant could be held liable for the actions of a third-party in violating the TCPA. An entity may be vicariously liable "for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Dish Network*, 28 FCC Rcd. at 6584. Courts have also held that agency principles

can similarly apply to related claims brought under the Texas state law. *VSC Operations*, 2024 WL 3405601, at *6 (collecting cases). Under "federal common law principles of agency," the "conduct of the telemarketer who makes the calls [violative of the TCPA and Texas Business and Commerce Code] can be imputed to the seller if the telemarketer is an agent of the seller." *Guadian v. Progressive Debt Relief, LLC*, No. 3:23-cv-00235-FM, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023) (citing *Johnson v. Palmer Admin. Servs., Inc*., No. 22-cv-00121, 2022 WL 17546957, at *9 (E.D. Tex. Oct. 20, 2022)), *adopted*, 2023 WL 8242475 (Nov. 28, 2023). In exploring whether defendants are vicariously liable under agency principles, courts have looked for facts that are indicative of the defendant's control and authority over the third party, which would suggest the existence of an agency relationship. *See VSC Operations*, 2024 WL 3405601, at *2–4.

### i.    Control

To establish the existence of an agency relationship, "the principal's right to control the agent's actions" is "essential." *Doane v. Benefytt Techs., Inc.*, No. 22-cv-10510, 2023 WL 2465628, at *8 (D. Mass. Mar. 10, 2023) (quoting Restatement (Third) of Agency § 1.01 cmt. f). "The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *Id.* (quoting Restatement (Third) of Agency § 1.01 cmt. f.). Thus, "[f]or example, when a company wishes to place an advertisement in a circular, the publisher of the circular does not become the agent of the company." *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020).

In the TCPA context, courts consider whether defendants "maintained control over the content, timing, and recipients" of the calls or text messages sent by the telemarketer. *Id.*; *see Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 743 (N.D. Ill. 2014) (considering the extent to

which the defendant "had the right to, and did, control the manner and means of . . . telemarketing"). For instance, the *Toney* court found a plausible agency relationship where the defendant developed a script, required the telemarketer to use that script, directed the telemarketer to provide a certain call-back number, and imposed guidelines for handling customer information and obtaining customer acceptance of terms and conditions. *Toney*, 75 F. Supp. 3d at 743. A court in this District has similarly allowed claims to proceed against a defendant who allegedly gave the telemarketer "scripts and pricing information to use on [the] calls." *Salaiz v. Pelican Inv. Holdings Grp., LLC*, No. 3:22-cv-29-FM, 2022 WL 17813229, at *2 (W.D. Tex. Nov. 10, 2022).

Plaintiff alleges that Hawkins, owner of Texas Roofing, exercised control over the telemarketers' actions. Specifically, as in *Toney* and *Pelican Investment*, Plaintiff alleges that Hawkins "had day-to-day control over the actions of its telemarketers," and "instructed [the telemarketers] on what states to call, what hours to call, and what to say when the phone calls were answered." Am. Compl. ¶¶ 110, 106. Hawkins also allegedly "directed [the telemarketers] on the qualifications required for each customer and supplied [the telemarketers] with the hardware and software used to enter those qualifications." *Id.* ¶ 107. These instructions were given not only at the beginning of the relationship between Texas Roofing and the telemarketers, but also allegedly on an ongoing basis. *Id.* ¶ 111 (alleging that Hawkins "gave interim instructions to [the] telemarketers by providing lead-qualifying instructions and lead volume limits"). These allegations sufficiently plead that Hawkins and, by extension, Texas Roofing retained the power to control the telemarketing activities that the telemarketers conducted on its behalf, sufficient to establish an agency relationship. *See Toney*, 75 F. Supp. 3d at 743.

11

ii.    **Authority**

When an agency relationship is established, the principal may be held vicariously liable for actions taken by its agents within the scope of their authority, or which the principal later ratifies.  Restatement (Third) of Agency § 1.01 cmt. c.  "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."  *Id.* § 2.01.  Actual authority may be either expressly conferred or implied by the principal's manifestations.  *Doane*, 2023 WL 2465628, at *8 (citing Restatement (Third) of Agency § 2.01 cmt. b).

The same allegations that plausibly establish that Texas Roofing retained the right to control the telemarketer's activities also establish that Texas Roofing expressly authorized the telemarketers to conduct telemarketing activities on its behalf, by instructing them when, where, and how to do so.  *See Toney*, 75 F. Supp. 3d at 743.  Plaintiff has therefore adequately pleaded a basis for holding Texas Roofing vicariously liable for the telemarketer's activities under a theory of actual authority.  Accordingly, the Court need not consider whether Plaintiff has adequately pleaded a basis for vicarious liability against Texas Roofing under theories of apparent authority or ratification.  *Cf. Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1076 (9th Cir. 2019) (declining to reach actual authority question by holding that TCPA defendant could be held liable for telemarketer's actions under a ratification theory).

Thus, Texas Roofing can be held vicariously liable for the alleged calls.

b.    **Plaintiff's TCPA Claims**

i.    **Section 227(c) and 47 C.F.R. § 64.1200 Violations[5]**

Turning to the substance of Plaintiff's claims, Plaintiff first alleges that Texas Roofing's

nine calls violated Federal Communications Commission ("FCC") regulations contained at 47

C.F.R. § 64.1200(c) and promulgated pursuant to § 227(c)(3)(F) of the TCPA.[6]  *See* Mot. 10;

Am. Compl. ¶¶ 150–54.  As relevant here, these regulations state that "[n]o person or entity shall

initiate any telephone solicitation to" "[a] residential telephone subscriber who has registered his

or her telephone number on the national do-not-call registry."  47 C.F.R. § 64.1200(c)(2).  An

individual or entity that violates this regulatory provision is not liable if they are able to

demonstrate that they: 1) committed the violation inadvertently; 2) have implemented written

procedures and training of personnel to ensure compliance with the do-not-call registry;

3) maintain records of telephone numbers it may not call; and 4) use a process to check phone

numbers against the do-not-call registry a minimum of every thirty-one days.  *Id.*

§ 64.1200(c)(2)(i)(A)–(D).  Section 227(c) of the TCPA creates a private right of action that

allows individuals who receive calls made in violation of the FCC regulations to sue for damages

if they receive "more than one telephone call within any 12-month period by or on behalf of the

same entity."  47 U.S.C. § 227(c)(5).

---

[5] In addition to the three claims analyzed in this Order, Plaintiff—in his Amended Complaint—also brings claims under 47 C.F.R. § 64.1200(d), Am. Compl. ¶¶155–158, and under Section 305.053 of the Texas Business and Commerce Code, *id.* ¶¶159–62.  But Plaintiff does not seek default judgment for these claims in his Motion; accordingly, the Court determines that Plaintiff has abandoned these claims, and the Court does not consider them further.  *See* Mot. 10–11.

[6] Plaintiff, in his Motion, also fleetingly references "47 U.S.C. § 227(d)(6)" in connection with this claim. Mot. 10.  But this provision of the TCPA does not appear to exist and Plaintiff offers no indication of which provision of the TCPA he may be intending to refer to.  Thus, the Court considers Plaintiff's "§ 227(d)(6)" claim no further.

Plaintiff alleges that Defendants called him on his "personal cell phone that he uses for personal, family, and household use."  Am. Compl. ¶ 144.  Plaintiff further alleges that he "primarily relies on cellular phones to communicate with friends and family" and also that he "uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages."  *Id.*  Plaintiff thus sufficiently alleges that the phone in question falls under the TCPA's definition of a residential phone line.  *See, e.g.*, *VSC Operations*, 2024 WL 3405601, at *5 (holding that a cell phone can constitute a residential phone for the purposes of the TCPA when a plaintiff "sufficiently allege[s] that [they used their] cell phone for residential purposes" (citation omitted)).  Further, Plaintiff alleges that he personally "registered [the cell phone at issue in this case] on the National-Do-Not-Call Registry on August 19, 2021," and that his registration remained active at the times of all of the phone calls.  Am. Compl. ¶¶ 25–26.  Plaintiff then received a total of nine phone calls made by telemarketers on behalf of Texas Roofing despite registering his phone number on the registry more than thirty-one days prior.  *Id.* ¶¶ 25–26, 41–44 (Plaintiff received calls in May 2023 after registering phone number on registry in August 2021).  Further, all nine phone calls occurred within a period of ten days—meaning Plaintiff received "more than one telephone call" on behalf of Texas Roofing during a twelve-month period.  Am. Compl. ¶ 83 tbl. A; 47 U.S.C. § 227(c)(5).  As Texas Roofing has not meaningfully responded to Plaintiff's allegations, there is nothing in the record to suggest to the Court that its liability may be precluded on other grounds.  *See* 47 C.F.R. § 64.1200(c)(2)(i)(A)–(D).  Thus, Plaintiff sufficiently alleges violations of the FCC regulations against Texas Roofing for which he can recover pursuant to § 227(c)(5) of the TCPA.

### ii.    Section 227(b) Violations

Plaintiff further alleges that each of Texas Roofing's nine calls violated § 227(b) of the TCPA. *See* Am. Compl. ¶¶ 145–149. Section 227(b) prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ["ATDS"] or an artificial or prerecorded voice" to any phone number assigned to a "cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1); *see Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021) (holding that, to fall within the TCPA's definitions, an ATDS must have the "capacity to use a random or sequential number generator to either store or produce phone numbers to be called"). Section 227(b) creates a private right of action, allowing individuals to bring suit for violations of the subsection. *Id.* § 227(b)(3).

Plaintiff's Amended Complaint alleges that he "never consented to receive any of [Texas Roofing's] calls," Am. Compl. ¶ 8, that "[n]one of the alleged calls were made for emergency purposes," *id.* ¶ 81, and that "[t]he calls were made using an ATDS," *id.* ¶ 46. Plaintiff further states that he had no prior relationship with Texas Roofing, *id.* ¶ 48, that Texas Roofing had no reason to know of his phone number, *id.* ¶ 49, and that the telephone calls were not directed at him specifically, *id.* ¶ 47. *See Atkinson v. Pro Custom Solar LCC*, No. 5:21-cv-178-OLG, 2021 WL 2669558, at *1 (W.D. Tex. June 16, 2021) (holding that plaintiff survived defendant's motion to dismiss under *Duguid* when plaintiff alleged that she was called and texted randomly rather than via "targeted, individualized calls or texts to her").

15

These allegations, taken as a whole, are sufficient to "indirectly suggest that [an ATDS] was used." *See Horton v. Texas Fed'n for Child. PAC, Inc.*, No. 22-cv-2736, 2023 WL 3136422, at *4 (N.D. Tex. Apr. 27, 2023) (citing *Hunsinger v. Alpha Cash Buyers, LLC*, 2022 WL 562761, at *4–5 (N.D. Tex. Feb. 24, 2022)) (denying in part motion to dismiss and holding plaintiff had sufficiently pleaded use of an ATDS where plaintiff alleged that text messages received were generic and not addressed to them specifically, that there was no "preexisting relationship between the parties," and there was no way for the defendants to have plaintiff's phone number). Plaintiff has thus adequately alleged that nine calls placed on behalf of Texas Roofing violated § 227(b).

### c.    Plaintiff's TBCC Claim

Finally, Plaintiff asserts claims under Section 302.101 of the TBCC. Mot. 10; Am. Compl. ¶¶ 133–39. This provision of Texas law provides that a "seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a). Courts have interpreted other provisions of the TBCC as creating a private right of action for violations of the TBCC's registration certificate requirement. *See, e.g.*, *Cacho v. Live Transfers, Inc.*, No. 3:23-cv-372-DCG, 2024 WL 3103324, at *5 (W.D. Tex. June 24, 2024) (holding that "[t]here is a private right of action available to enforce § 302.101," and then citing Section 302.303(b) of the Texas Business and Commerce Code), *adopted*, 2024 WL 3595780 (July 30, 2024); *Barack v. Bankroll Cap., Inc.*, No. 23-cv-615, 2024 WL 3015327, at *4 (N.D. Tex. May 30, 2024) ("Section 302.302 of the TBCC provides a private cause of action to enforce the provisions of Chapter 302, for 'a civil penalty of not more than $5,000 for each violation.'" (citing Section 302.302 of the

16

Texas Business and Commerce Code)) *adopted*, 2024 WL 3015317 (June 14, 2024); *Auguston v. Nat'l Admin. Serv. Co., LLC*, No. 21-cv-819, 2023 WL 1810397, at *8 (E.D. Tex. Jan. 11, 2023) ("While Texas Business and Commerce Code Section 302.101 itself does not provide a private right of action, Section 302.303 provides the plaintiff a private right of action to enforce violations of Section 302.101."), *adopted*, 2023 WL 1802389 (Feb. 7, 2023).

As already established, Plaintiff has sufficiently pleaded that telemarketers called him nine times on behalf of Texas Roofing. Further, Plaintiff alleges he is a resident of Texas and was present in Texas "during all calls at issue in this case." Am. Compl. ¶1. Plaintiff further states that the Texas Secretary of State's Telephone Solicitors Search system does not have an entry for Texas Roofing or Hawkins. *Id.* ¶ 92. Plaintiff's allegations, taken together, are more than sufficient to allege that Defendants violated the TBCC. *See, e.g.*, *Live Transfers*, 2024 WL 3103324, at *5 (holding that plaintiff sufficiently alleged that defendant violated TBCC's registration certificate requirement when plaintiff alleged in his complaint that he was a resident of Texas, and that the defendant was not registered with the Texas Secretary of State).

### 4.    Plaintiff is entitled to damages.

Plaintiff seeks a total of $54,572.00 in damages for Texas Roofing's violations of the TCPA and TBCC. Mot. 12. A plaintiff seeking damages under §§ 227(b) and 227(c) of the TCPA may recover their actual monetary loss or statutory damages of $500.00. 47 U.S.C. § 227(b)(3)(B); *id.* § 227(c)(5)(B). Additionally, if the "court finds that the defendant willfully or knowingly violated" the TCPA or associated regulations, the court "may, in its discretion, increase the amount of the award to an amount equal to not more than [three] times [the amount of statutory damages]." *Id.* § 227(b)(3)(C); *id.* § 227(c)(5)(B). The applicable provision of the TBCC provides for a "civil penalty of not more than $5,000 for each violation." Tex. Bus. &

17

Com. Code § 302.302(a).  Here, Plaintiff originally sought to recover minimum statutory damages plus enhanced damages for Defendants' allegedly willful or knowing violations of the TCPA, as well as the maximum civil penalty under the TBCC.  Am. Compl.  ¶¶ 145–49, 150–54, 163–66.[7]  But while Plaintiff discusses the standard for enhanced damages in his Motion, Mot. 11–12, Plaintiff ultimately requests only minimum statutory damages under the TCPA.  *See id.* (requesting statutory damages of $500 per violation of the TCPA).

Although a plaintiff's pleading can provide a sufficient basis for a court to enter default judgment as to liability, this is often not the case for damages.  *See United State ex rel. M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).  Instead, damages must generally be proven by the submission of evidence, such as an affidavit, or through an evidentiary hearing.  *See Freeman*, 605 F.2d at 857.  District courts have "wide latitude" regarding whether to hold an evidentiary hearing on the issue of damages.  *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *see also* Fed. R. Civ. P. 55(b)(2)(B).

A hearing is unnecessary if "the amount claimed is a liquidated sum or one capable of mathematical calculation," *Freeman*, 605 F.2d at 857, and courts can instead determine damages based on "pleadings or information in the existing record."  Daniel R. Coquillette et al., *Moore's Federal Practice* § 55.32[2][a], 55-50 (3d. 2024).  Where a plaintiff seeks only the minimum statutory damages available, courts routinely make such awards based solely on review of the pleadings and without any evidence or a hearing.  *Id.*; *see, e.g.*, *Live Transfers*, 2024 WL 3103324, at *5 (awarding minimum statutory damages based on allegations contained in amended complaint regarding number of times plaintiff was called by defendant); *Hunsinger v.*

---

[7] As stated earlier, the Court has altered the paragraph numbering in its references to this section of Plaintiff's Amended Complaint.  *See* note 1, *supra*.

*204S6TH LLC*, No. 21-cv-2847, 2022 WL 1110354, at *9 (N.D. Tex. Mar. 23, 2022) (citations

omitted) ("Courts that have similarly awarded default judgments for TCPA claims have

determined the number of phone calls based upon the allegations in the complaint *or* upon

additional evidence . . . ." (emphasis added)), *adopted*, 2022 WL 1102864 (N.D. Tex. Apr. 13,

2022); *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 544

(E.D. Pa. 2008) ("In default judgment cases, courts can order the minimum statutory damages

without conducting a hearing.").

       To be sure, the caselaw regarding the award of statutory damages at default judgment

based solely on the pleadings is unclear, and courts often appear to conflate the need for an

evidentiary hearing with the need for submission of at least some written evidence. *See, e.g.*,

*Walker v. Koelzer*, 715 F. Supp. 3d 956, 966 (N.D. Tex. 2024) ("Normally, damages are not to

be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary

facts." (citing *Freeman*, 605 F.2d at 857)); *EW Polymer Grp., LLC v. GSX Int'l Grp., Inc.*, 622 F.

Supp. 3d 232, 239 (M.D. La. 2022) ("A court's award of damages in a default judgment must be

determined after a hearing, unless the amount claimed can be demonstrated 'by detailed

affidavits establishing the necessary facts.'").  But common sense supports the view that courts

can award minimum statutory damages based solely on a review of a plaintiff's pleading.

Because they act as a floor to the amount of recoverable damages, a plaintiff is automatically

entitled to minimum statutory damages if they can demonstrate a defendant's liability under the

relevant statute.  As discussed above, to assess liability at default judgment, courts accept the

plaintiff's well-pleaded allegations as true.  It would thus be incongruent to require a plaintiff to

submit additional evidence to support an award of minimum statutory damages, but not for

liability, when those damages flow automatically from liability. *Cf. James*, 6 F.3d at 311.

(holding that an evidentiary hearing was "superfluous" when "it would have revealed no pertinent information").

### a.    TCPA Damages

Plaintiff seeks damages under both §§ 227(c) and 227(b) of the TCPA.  Mot. 11–12.  A plaintiff can recover for violations of multiple subsections of the TCPA for one call.  *See, e.g.*, *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1105–06 (11th Cir. 2015) ("[Plaintiff] argues that the district court erred when it computed damages by treating each fax as a single violation of the Act because each fax violated two subparts of the Act, and so each fax amounted to *two* violations. We agree . . . ."); *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011) ("We therefore conclude that a person may recover statutory damages . . . [under both] § 227(b)(3), and . . . § 227(c)(5) . . . ."); *Thompson v. Dealer Renewal Servs.*, No. 21-cv-467, 2021 WL 5416605, at *3 (N.D. Tex. Nov. 18, 2021) (granting default judgment and awarding damages to plaintiff under both §§ 227(b) and 227(c) of the TCPA).

### i.    Section 227(c) Violations

Plaintiff seeks a total of $4,500.00 in damages under section 227(c) of the TCPA for nine violations at $500.00 per call.  Mot. 12.  Plaintiff does not provide an affidavit or other evidence to support his claims for damages.  *See generally id.*

Because it appears that Plaintiff seeks only the minimum statutory damages to which he is entitled, the Court can award damages based solely on review of his pleading.[8]  Accordingly,

---

[8] As discussed above, although the best reading of Plaintiff's Motion is that he seeks only the statutory minimum, there is some ambiguity regarding whether he also seeks enhanced damages.  Although a court may award minimum statutory damages based on the pleadings alone, when a plaintiff seeks damages above the statutory minimum a court unequivocally requires additional evidence that supports entry of an increased damages award. *See, e.g.*, *Arredondo v. Flexi Corp.*, No. 17-cv-4, 2017 WL 7796192, at *2 (S.D. Tex. Aug. 18, 2017) (denying enhanced damages when the plaintiff's filings did "not offer a

because Plaintiff has sufficiently alleged that Defendants called him and violated § 227(c) of the TCPA nine times, the Court awards him a total of $4,500.00 pursuant to 47 U.S.C. § 227(c)(5)(B).

### ii.    Section 227(b) Violations

Plaintiff seeks a total of $4,500.00 in damages under section 227(b) of the TCPA for nine violations at $500.00 per call. *Id.*

As before, Plaintiff seeks only the minimum statutory damages, and the Court can thus award damages based solely on review of his Amended Complaint. Accordingly, because Plaintiff has sufficiently alleged that Defendants violated § 227(b) of the TCPA nine times, the Court awards him a total of $4,500.00 pursuant to 47 U.S.C. § 227(b)(3)(B).

### b.    Damages for Violation of the TBCC

Plaintiff seeks a total of $45,000.00 in damages for nine violations of Section 302.101 of the Texas Business and Commerce Code. Mot. 12.

In determining how much to award a plaintiff under this provision of the TBCC, courts in this District—including this one—have routinely awarded plaintiffs the full amount of $5,000.00 for each violation under the TBCC. *See, e.g.*, *Live Transfers*, 2024 WL 3595780, at *2–3, 4 (adopting magistrate judge's report and recommendation awarding plaintiff $5,000.00 per violation of the TBCC); *Callier v. Tip Top Cap. Inc.*, No. 3:23-cv-437-KC, 2024 WL 1637535, at *4 (W.D. Tex. Apr. 16, 2024) (adopting magistrate judge's report and recommendation in part to award plaintiff $5,000.00 per violation of the TBCC); *Thomas v. Zenith Solar, LLC*, No. 7:22-cv-47-DC-RCG, 2022 WL 17813168, at *4 (W.D. Tex. Aug. 1, 2022) (making recommendation

---

sufficient indication" that defendant's violations were "willful and knowing"). Thus, to the extent Plaintiff seeks enhanced damages, that request is denied for his failure to submit any evidence in support.

of award of $5,000.00 per violation of the TBCC).  Absent argument or authority to the contrary, the Court sees no reason to deviate from this approach here.

Accordingly, because Plaintiff has sufficiently alleged that Defendants called him and violated Section 302.101 of the Texas Business and Commerce Code nine times, the Court awards him a total of $45,000.00 pursuant to Section 302.302 of the Texas Business and Commerce Code.

### c.    Costs

Finally, Plaintiff seeks $402.00 in "filing fees" and $170.00 in "service fees."  Mot. 12. The federal statute governing generally recoverable costs for litigants in federal court is 28 U.S.C. § 1920.  This statute provides that recoverable costs include, among others, "[f]ees of the clerk and marshal."  But costs for private process servers are generally not recoverable under 28 U.S.C. § 1920.  *See Zastrow v. Hous. Auto M. Imports Greenway, Ltd.*, 695 F. App'x 774, 780 (5th Cir. 2017) ("[T]his circuit has held that costs for private process servers [under § 1920] are not recoverable, absent exceptional circumstances.").  Further, Fifth Circuit federal district courts have also held that "service fees" are similarly not recoverable in federal courts under the Texas Business and Commerce Code given the "strong presumption that federal law controls costs awards for private process server fees" in the Fifth Circuit.  *Bates Energy Oil & Gas, LLC v. Complete Oil Field Servs., LLC*, No. 5:17-cv-808-RCL, 2021 WL 3137421, at *16 (W.D. Tex. Feb. 22, 2021) (collecting cases); *see also Carter v. Gen. Motors Corp.*, 983 F.2d 40, 43 (5th Cir. 1993) ("We note that several other circuits and commentators share our conclusion that federal procedural law ordinarily governs the award of costs in diversity cases.").

Plaintiff argues that he is entitled to recover his costs incurred in serving Texas Roofing under Rule 4(d)(2) of the Federal Rules of Civil Procedure and cites to a district court case from

the United States Court for the District of New Jersey where the court awarded fees and costs to a plaintiff pursuant to Rule 4 of the Federal Rules of Civil Procedure.  Mot. 12 (citing *Mercedes-Benz Fin. Servs. USA LLC v. Chandler*, No. 19-cv-15716, 2020 WL 3892360, at \*2 (D.N.J. July 2, 2020).  But Rule 4 provides only that certain expenses can be recovered by a plaintiff when a defendant, upon request and without good cause, fails to waive service of process.  Fed. R. Civ. P. 4.  Nothing in the plain text of the Rule establishes that a plaintiff can recover expenses for service of process without first attempting to secure a waiver from a defendant.  Courts have held that even when a defendant is actively attempting to avoid service such that attempting to secure a waiver of service of process would be futile, this does not relieve a plaintiff of their obligation to first attempt to secure a waiver before they can recover under Rule 4.  *See, e.g.*, *Hy Cite Corp. v. badbusinessbureau.com, L.L.C.*, 418 F. Supp. 2d 1142, 1153–54 (D. Ariz. 2005).  Plaintiff does not claim to have attempted to secure a waiver of service from Texas Roofing in his Motion, nor has he filed any other evidence to suggest this.  *See generally* Mot.  Accordingly, he cannot recover service fees under Rule 4 here.

Plaintiff can therefore only recover for the costs of private process server fees if he falls under the "extraordinary circumstances" exception allowing for recovery of private process server fees under Fifth Circuit precedent.[9]  *See Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010) ("[T]his court held that absent exceptional circumstances, the costs of a private process server are not recoverable . . . ."); *Cypress-Fairbanks Indep. Sch. Dist. v. Barry*

---

[9] As courts have noted, it is unclear the extent to which the Fifth Circuit's private process server fee exception for "exceptional circumstances" survives the Supreme Court's decision in *Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334 (2019) (holding that, absent explicit legislative authorization otherwise, litigants bringing suit under federal statutes may only recover the fees and costs delineated in §§ 1821 and 1920 of Title 28 of the United States Code).  *Bates Energy Oil*, 2021 WL 3137421, at \*17 n.11.  But because it has not been directly overruled by *Rimini Street*, lower courts in the Fifth Circuit must continue to apply it.  *Id.*

*F. ex rel. Michael F.*, 118 F.3d 245, 257 (5th Cir. 1997) ("As there was nothing exceptional about the parties or the nature of this case, the district court should have denied these unnecessary private service costs.").  But nothing suggests any extraordinary circumstances here, and Plaintiff therefore cannot recover for service fees.  *See generally* Mot.  Plaintiff can recover for filing fees, however, 28 U.S.C. § 1920, and the Court takes judicial notice of the $402.00 filing fee paid by Plaintiff, Filing Fee Received, ECF No. 4.

Accordingly, the Court awards Plaintiff $402.00 in costs.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion, ECF No. 46, is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that all claims against Defendant Chad Hawkins are **DISMISSED**.

**IT IS FURTHER ORDERED** that **DEFAULT JUDGMENT** is **ENTERED** in favor of Plaintiff Erik Salaiz, and against Defendant Texas Roofing & Renovations LLC. Defendant Texas Roofing & Renovations LLC **SHALL PAY** Plaintiff:

a. $4,500.00 in statutory damages for nine violations of 47 U.S.C. § 227(c) pursuant to § 227(c)(5)(B);

b. $4,500.00 in statutory damages for nine violations of 47 U.S.C. § 227(b) pursuant to § 227(b)(3)(B);

c.  $45,000.00 in damages for nine violations of Section 302.101 of the Texas Business and Commerce Code pursuant to Section 302.302 of the Texas Business and Commerce Code; and

d.  $402.00 in costs of court.

In total, the Court **GRANTS** default judgment in favor of Plaintiff and against

Defendants in the amount of $54,402.00.

**IT IS FURTHER ORDERED** that all monetary judgments awarded herein shall accrue

post-judgment interest at the legal rate prescribed by 28 U.S.C. § 1961, calculated from the date

of this Order.

The Clerk shall close the case.

**SO ORDERED.**

SIGNED this 28th day of October, 2024.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE